763 N.W.2d 731 (2009)
277 Neb. 593
STATE of Nebraska, appellee,
v.
Joshua D. HAMILTON, appellant.
No. S-08-506.
Supreme Court of Nebraska.
April 10, 2009.
*733 Dennis R. Keefe, Lancaster County Public Defender, John C. Jorgensen, and Ti'era M. Johnson, Senior Certified Law Student, for appellant.
Jon Bruning, Attorney General, and Nathan A. Liss for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
STEPHAN, J.
Pursuant to a plea agreement resulting in the dismissal of more serious charges and an agreement by the State not to file additional charges, Joshua D. Hamilton entered pleas of no contest to one count of third degree sexual assault of a child, a Class IIIA felony[1] and one count of attempted first degree sexual assault, a Class III felony.[2] The district court for Lancaster County accepted the pleas and convicted Hamilton of the two offenses. At a sentencing hearing, the court determined that Hamilton had committed an "aggravated offense" as defined in the Sex Offender Registration Act (SORA)[3] and would be subject to the lifetime registration requirement of SORA and the lifetime community supervision requirement of Neb.Rev.Stat. § 83-174.03 (Reissue 2008). The court sentenced Hamilton to 3 to 5 years' imprisonment for the offense of third degree sexual assault of a child and 10 to 15 years' imprisonment for the offense of attempted first degree sexual assault, with the sentences to run consecutively and credit given for time served. Hamilton perfected this timely appeal.

FACTS
In 2007, two children under the age of 12 reported that they had been sexually assaulted by Hamilton. Hamilton's biological daughter reported that Hamilton touched her with his hands and penis on top of and under her clothing and that he penetrated her vagina with his penis. The daughter of a woman to whom Hamilton was married in 2007 reported that Hamilton had penetrated her vagina with his finger and penis on numerous occasions over a 3-year period.
When interviewed regarding these reports, Hamilton told police that he used drugs and alcohol while caring for the children and could not recall assaulting either one of them. Hamilton told police it *734 was possible that he had assaulted the girls during a drug- or alcohol-induced blackout. He also stated that he believed the girls were telling the truth.
Hamilton was originally charged with two counts of third degree sexual assault of a child and one count of first degree sexual assault of a child. He eventually entered into the plea agreement described above, resulting in his conviction on one count of third degree sexual assault of a child and one count of attempted first degree sexual assault. The factual basis provided by the prosecutor at the plea hearing included the reports of the minor victims that Hamilton had sexually penetrated them on several occasions. The court offered Hamilton the opportunity to comment on the facts as recited by the prosecutor, but Hamilton declined.
At the sentencing hearing, Hamilton's counsel argued that because sexual penetration was not an element of either of the offenses for which Hamilton was convicted, neither crime could be considered an "aggravated offense" under SORA. SORA defines "aggravated offense" as "any registrable offense under section 29-4003 which involves the penetration of (i) a victim age twelve years or more through the use of force or the threat of serious violence or (ii) a victim under the age of twelve years."[4] In support of this argument, Hamilton's counsel relied on State v. Mastne,[5] a 2006 opinion in which the Nebraska Court of Appeals held that existence of an "aggravated offense" under SORA must be determined only from the statutory elements of the offense for which a defendant is convicted and that a judge may not make factual findings or determinations which go beyond such elements. The prosecutor argued that the court could make factual determinations regarding the existence of an aggravated offense based upon the uncontested factual bases for the pleas. Without discussing Mastne, the court made a determination that each of Hamilton's victims was under the age of 12 and that the facts warranted treating both crimes as aggravated offenses for purposes of SORA. The court notified Hamilton that he would be subject to a lifetime registration requirement under SORA and a lifetime community supervision requirement under § 83-174.03. The court then imposed the sentences described above. Hamilton perfected this timely appeal, and we granted the State's petition to bypass and motion for oral argument.

ASSIGNMENTS OF ERROR
Hamilton assigns, restated, that the district court erred (1) in determining that his offenses were aggravated offenses for purposes of SORA and lifetime community supervision and (2) by imposing excessive sentences that constituted an abuse of discretion.

STANDARD OF REVIEW
[1, 2] Statutory interpretation presents a question of law. When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.[6]
[3] A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court.[7]

*735 ANALYSIS

AGGRAVATED OFFENSE FOR PURPOSES OF SORA AND LIFETIME PAROLE SUPERVISION
[4] SORA is a civil regulatory scheme intended by the Legislature to protect the public from the danger posed by sex offenders.[8] SORA applies to any person who pleads guilty or is found guilty of certain offenses listed in § 29-4003(1). Included in that list are sexual assault of a child in the third degree[9]; first degree sexual assault of a child[10]; and attempt, solicitation, or conspiracy to commit an offense listed in § 29-4003(1)(a).[11] SORA includes a general requirement that persons convicted of these offenses must register with the sheriff of the county in which he or she resides[12] during any period of supervised release, probation, or parole and "for a period of ten years after the date of discharge from probation, parole, or supervised release or release from incarceration, whichever date is most recent."[13] Certain sex offenders, including those who commit an aggravated offense, are subject to a lifetime registration requirement.
The lifetime community supervision requirement of § 83-174.03 incorporates and mirrors the lifetime registration requirement of SORA.[14] A defendant who commits an aggravated offense as defined by SORA "shall, upon completion of his or her term of incarceration or release from civil commitment, be supervised in the community by the Office of Parole Administration for the remainder of his or her life."[15]
SORA defines an aggravated offense as "any registrable offense under section 29-4003 which involves the penetration of (i) a victim age twelve years or more through the use of force or the threat of serious violence or (ii) a victim under the age of twelve years."[16] The question presented in this appeal is whether, as Hamilton contends, a court may look only to the statutory elements of the offense in making the "aggravated offense" determination or whether, as the State argues, a court may consider facts in the record regarding the manner in which the offense was committed.
In Mastne, the Court of Appeals held that only the elements of the offense could be considered in determining whether it was an "aggravated offense" under SORA. In reaching this conclusion, the court compared the language of § 29-4005(2) with that of § 29-4005(3)(a), which subjects a sex offender determined to be a "sexually violent predator" to, inter alia, a lifetime registration requirement. The statute provides in relevant part:
(2) A person required to register under section 29-4003 shall be required to register under the act for the rest of his or her life if the offense creating the obligation to register is an aggravated offense, if the person has a prior conviction for a registrable offense, or if the person is required to register as a sex *736 offender for the rest of his or her life under the laws of another state, territory, commonwealth, or other jurisdiction of the United States. A sentencing court shall make that fact part of the sentencing order.
(3)(a) When sentencing a person for a registrable offense under section 29-4003, a court may also determine if the person is a sexually violent predator. When making its determination the court shall consider information contained in the presentence report and the recommendation of experts in the behavior and treatment of sex offenders, victims' rights advocates, and representatives of law enforcement agencies.[17]
The Court of Appeals found the difference in the language used in § 29-4005(2) and (3)(a) to be significant. It reasoned that the language used by the Legislature in § 29-4005(3)(a) made it clear that the court was to make a factual determination of whether an offender was a "sexually violent predator." The Mastne court reasoned that by omitting language similar to the second sentence of § 29-4005(3)(a) from § 29-4005(2), "the Legislature made it equally clear that it did not intend for the sentencing court to make a factual finding or determination regarding whether or not an offense is `an aggravated offense.'"[18]
We do not find the meaning of § 29-4005(2) to be quite so clear. The second sentence of that subsection refers to the existence of an aggravated offense or other grounds for lifetime registration as a "fact" which is to be made a part of the sentencing order. This suggests that some factfinding is necessary, and we have stated that the statute "require[s] the court, as part of the sentence, to determine if the defendant committed an aggravated offense."[19] Had the Legislature intended that the "fact" of penetration for purposes of an aggravated offense determination should be derived solely from the elements of the offense, it could have used specific language to that effect. For example, the Legislature has enacted a statute providing that an offender may be required to submit to a human immunodeficiency virus antibody or antigen test if he or she has been convicted of certain specified offenses "or any other offense under Nebraska law when sexual contact or sexual penetration is an element of the offense."[20] We conclude that § 29-4005(2) is ambiguous as to whether the sentencing court may make a factual finding in determining that the offense committed by a particular defendant under § 29-4005(4)(a) "involves the penetration of ... a victim under the age of twelve years" for purposes of determining the existence of an aggravated offense under SORA. Accordingly, the statute is open to construction.
[5-7] When construing a statute, an appellate court must look to the statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it.[21] If possible, an appellate court will try to avoid a statutory construction which would lead to an absurd result.[22] *737 Statutes relating to the same subject matter will be construed so as to maintain a sensible and consistent scheme, giving effect to every provision.[23]
In enacting SORA, the Legislature made findings that "sex offenders present a high risk to commit repeat offenses" and that the "efforts of law enforcement agencies to protect their communities, conduct investigations, and quickly apprehend sex offenders are impaired by the lack of available information about individuals who have pleaded guilty to or have been found guilty of sex offenses and who live, work, or attend school in their jurisdiction."[24] The Legislature further found that "state policy should assist efforts of local law enforcement agencies to protect their communities" by requiring registration of sex offenders.[25] By imposing a 10-year registration requirement for some sex offenders but a lifetime registration requirement for others, including those who commit aggravated offenses, the Legislature clearly intended to provide enhanced assistance to law enforcement and protection to the public with respect to sex offenders who commit aggravated offenses.[26] That intention would be frustrated if a person who had in fact sexually penetrated a victim under the age of 12 years would be exempted from the lifetime registration requirement simply by pleading to a lesser offense which does not involve the element of penetration.
We agree with the Court of Appeals that § 29-4005(2) and (3)(a) should be read together, because both relate to a lifetime registration requirement for certain sex offenders. However, contrary to the reasoning of Mastne, we discern a consistency in the two statutory provisions. The use of the word "fact" in the second sentence of § 29-4005(2) read in conjunction with the word "also" in the first sentence of § 29-4005(3)(a) indicate a legislative intent that there be a factual determination by the sentencing judge under both statutory provisions.
Applying the reasoning of Mastne to § 29-4005(2) would, in our view, lead to an absurd result. Sexual penetration is an element in only three of the registrable offenses currently listed in § 29-4003: first degree sexual assault,[27] first degree sexual assault on a child,[28] and incest of a minor.[29] None of these include an element of "use of force or the threat of serious violence,"[30] and thus, applying the reasoning of Mastne, only first degree sexual assault of a child as currently defined in § 28-319.01 would meet all requirements for an aggravated offense under § 29-4005(4)(a). However, § 28-319.01 was first enacted in 2006.[31] Prior to that time, the offense of sexual assault of a child did not include penetration as an element.[32] Thus, in 2002, when the Legislature amended SORA to provide a lifetime registration requirement for those committing *738 aggravated offenses,[33] there were no existing offenses with elements strictly corresponding to the definition of an aggravated offense in § 29-4005(4)(a)(ii). This indicates that the Legislature intended the existence of an aggravated offense to be determined on the basis of actual facts, not statutory elements.
[8] We therefore conclude that under SORA, a sentencing judge need not consider only the elements of an offense in determining whether an aggravated offense as defined in § 29-4005(4)(a) has been committed. Instead, the court may make this determination based upon information contained in the record, including the factual basis for a plea-based conviction and information contained in the presentence report. To the extent that Mastne holds otherwise, it is disapproved.
[9] In this case, the factual basis received at the time of Hamilton's pleas and the information included in the presentence investigation report supports the finding of the district court that Hamilton committed aggravated offenses which subject him to the lifetime registration requirement of SORA.

EXCESSIVE SENTENCES CLAIM
[10-12] Hamilton's sentences fall within the statutory limits for third degree sexual assault of a child and attempted first degree sexual assault. Third degree sexual assault of a child is a Class IIIA felony,[34] punishable by a maximum of 5 years' imprisonment, a $10,000 fine, or both, with a minimum of zero year's imprisonment.[35] Hamilton was sentenced to a period of imprisonment of 3 to 5 years for this offense. Attempted first degree sexual assault is a Class III felony,[36] punishable by a minimum of 1 year's imprisonment and a maximum of 20 years' imprisonment, a $25,000 fine, or both.[37] Hamilton was sentenced to 10 to 15 years' imprisonment for this offense. Thus, we review the sentences for abuse of discretion, which occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[38]
[13] The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.[39] Hamilton argues the trial court abused its discretion by not giving proper weight and consideration to these factors when imposing his sentence. He argues that the sentencing order neglected his individual circumstances and that the trial court failed to assess the most effective rehabilitation measure, which Hamilton believes would include drug and alcohol rehabilitation.
At the time of sentencing, the court stated that "[h]aving regard for the nature and circumstances of the crimes and the history, character and condition of [Hamilton], the Court finds that imprisonment of [Hamilton] is necessary because a lesser sentence would depreciate the seriousness *739 of his crimes and promote disrespect for the law." Hamilton was 29 years old at the time of sentencing. The presentence investigation assessed Hamilton at a very high risk to reoffend and noted that he had substantial and long-running alcohol and drug abuse problems. Hamilton's record included juvenile offenses committed in 1993 and 1995 and numerous adult offenses committed between 1996 and 2007. While none of the prior adult offenses were felonies and the district court characterized them as "`[relatively minor,'" they indicate a pattern of unlawful behavior. The district court acknowledged the fact Hamilton's no contest pleas spared his young victims from having to testify, but it is also true that Hamilton benefited from the plea agreement.
Taking into consideration all of the relevant factors, we conclude that the district court did not abuse its discretion in sentencing Hamilton as it did.

CONCLUSION
For the reasons discussed, we affirm the judgment of the district court sentencing Hamilton to terms of incarceration for each of the two offenses for which he was convicted and imposing the requirements of lifetime registration and community supervision.
AFFIRMED.
GERRARD, J., participating on briefs.
NOTES
[1] See Neb.Rev.Stat. § 28-320.01 (Reissue 2008).
[2] See Neb.Rev.Stat. §§ 28-201(1)(b) and 28-319(2) (Reissue 2008).
[3] Neb.Rev.Stat. §§ 29-4001 to 29-4014 (Reissue 2008).
[4] § 29-4005(4)(a).
[5] State v. Mastne, 15 Neb.App. 280, 725 N.W.2d 862 (2006).
[6] See Steffen v. Progressive Northern Ins. Co., 276 Neb. 378, 754 N.W.2d 730 (2008).
[7] State v. Kinkennon, 275 Neb. 570, 747 N.W.2d 437 (2008).
[8] See, Slansky v. Nebraska State Patrol, 268 Neb. 360, 685 N.W.2d 335 (2004); State v. Worm, 268 Neb. 74, 680 N.W.2d 151 (2004).
[9] § 29-4003(1)(a)(iv).
[10] § 29-4003(1)(a)(v).
[11] § 29-4003(1)(a)(xiv).
[12] § 29-4004(1).
[13] § 29-4005(1).
[14] State v. Schreiner, 276 Neb. 393, 754 N.W.2d 742 (2008).
[15] § 83-174.03(1).
[16] § 29-4005(4)(a).
[17] § 29-4005(2) and (3)(a) (emphasis supplied).
[18] State v. Mastne, supra note 5, 15 Neb.App. at 290-91, 725 N.W.2d at 870.
[19] State v. Worm, supra note 8, 268 Neb. at 80, 680 N.W.2d at 158.
[20] Neb.Rev.Stat. § 29-2290(1) (Reissue 2008).
[21] Gilbert M. & Martha H. Hitchcock Found. v. Kountze, 272 Neb. 251, 720 N.W.2d 31 (2006); In re Petition of SID No. 1, 270 Neb. 856, 708 N.W.2d 809 (2006).
[22] Livengood v. Nebraska State Patrol Ret. Sys., 273 Neb. 247, 729 N.W.2d 55 (2007); City of Elkhorn v. City of Omaha, 272 Neb. 867, 725 N.W.2d 792 (2007).
[23] In re Estate of Reed, 271 Neb. 653, 715 N.W.2d 496 (2006); Curran v. Buser, 271 Neb. 332, 711 N.W.2d 562 (2006).
[24] § 29-4002.
[25] Id.
[26] See § 29-4005(1) and (2).
[27] § 28-319.
[28] Neb.Rev.Stat. § 28-319.01 (Reissue 2008).
[29] Neb.Rev.Stat. § 28-703 (Reissue 2008).
[30] See § 29-4005(4)(a).
[31] 2006 Neb. Laws, L.B. 1199, § 6.
[32] See § 28-320.01 (Cum. Supp. 2004) (quoted in State v. Mastne, supra note 5).
[33] 2002 Neb. Laws, L.B. 564, § 5. See State v. Worm, supra note 8.
[34] § 28-320.01(3).
[35] Neb.Rev.Stat. § 28-105 (Reissue 2008).
[36] §§ 28-201(1)(b) and 28-319(2).
[37] § 28-105.
[38] State v. Davis, 276 Neb. 755, 757 N.W.2d 367 (2008); State v. Reid, 274 Neb. 780, 743 N.W.2d 370 (2008).
[39] State v. Davis, supra note 38; State v. Reid, supra note 38; State v. Iromuanya, 272 Neb. 178, 719 N.W.2d 263 (2006).